| | | |
|---|---|---|
| TERRI SANDLES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:12-CV-309 |
| | § | |
| JOHN O. WRIGHT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant John O. Wright's ("Wright") Rule 12(c) Motion for Judgment on the Pleadings and Alternatively Rule 56 No-Evidence Motion for Summary Judgment (#14). Wright seeks the dismissal of Plaintiff Terri Sandles's ("Sandles") claims brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Texas Minimum Wage Act ("TMWA"), TEX. LAB. CODE § 62.001 *et seq.* Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Wright's motion is without merit.

I.    Background

Wright owns and operates the Cedar Grove RV Park ("Cedar Grove") in Liberty, Texas. Cedar Grove rents spaces for the parking of recreational vehicles as well as RV cabins. Sandles worked at Cedar Grove from January 2012 to May 2012 as a full-time park host. After her termination in May 2012, Sandles filed this lawsuit, alleging that Wright failed to pay her minimum wage and overtime compensation as required by law. She asserts claims pursuant to the FLSA and the TMWA.

On April 1, 2013, Wright filed the instant motion, arguing that Sandles's FLSA claims fail on the grounds that Sandles was not Wright's employee, she is not protected under the FLSA's "enterprise theory" of coverage, and her complaint is insufficient to state a claim upon which relief can be granted. In response, Sandles maintains that she is covered under the FLSA as an employee "engaged in commerce," Wright is her former employer, and her complaint is sufficient under FED. R. CIV. P. 8(a).

II.    Analysis

A.    Summary Judgment Standard[1]

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

---

[1] To the extent Wright seeks a "no evidence" summary judgment under TEX. R. CIV. P. 166a(i), that request is denied, as federal district courts apply FED. R. CIV. P. 56 when ruling on a motion for summary judgment. *See Rosero v. Fuentes*, Nos. 1-10-85, 1-10-51, 2011 WL 4017871, at *2 (S.D. Tex. Sept. 8, 2011) ("[T]his Court applies the federal summary judgment standard, not that of Texas."); *Green v. Tex. A&M Univ. Sys.*, No. H-07-1115, 2008 WL 416237, at *1 n.2 (S.D. Tex. Feb. 14, 2008) ("[W]hile a 'no evidence' summary judgment is authorized under Texas Rule of Civil Procedure 166a(i), there is no such thing under Federal Rule of Civil Procedure 56."); *Trautmann v. Cogema Mining, Inc.*, No. 5:04-CV-117, 2007 WL 1577652, at *2-3 (S.D. Tex. May 30, 2007) (same).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in [her] favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the

material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    FLSA

"In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir. 1993) (citing 29 U.S.C. § 202); *see also Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 407 (5th Cir. 2010). The Act created minimum protections for individual workers to ensure that each employee would receive "'"[a] fair day's pay for a fair day's work"'" and would be protected from 'the evil of "overwork" as well as "underpay."'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))); *see also Belt v. EmCare, Inc.*, 444 F.3d 403, 417 (5th Cir. 2006). Accordingly, the FLSA establishes a minimum wage, regulations governing maximum hours, record-keeping and reporting requirements, provisions regulating child labor, and civil and criminal penalties for violation of any of its terms. Minimum wage and overtime requirements are the two central themes of the Act. *Lee v. Veolia ES Indus. Servs., Inc.*, No. 1:12-CV-136, 2013 WL 2298216, at *10 (E.D. Tex. May 23, 2013); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 889-90 (E.D. Tex. 1997) (quoting *Arnold v. Arkansas*, 910 F. Supp. 1385, 1392 (E.D. Ark. 1995)). "'Section [6] . . . of the FLSA mandates [an] . . . hourly minimum wage due to all employees[, while] . . . Section [7] delineates maximum work hour limitations.'" *Cash*, 2 F. Supp. 2d at 890 (quoting *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996)). The fundamental underlying theory behind the FLSA's minimum wage provisions is that

employees are paid finally and unconditionally. *See Castellanos-Contreras*, 622 F.3d at 408; *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 637 (W.D. Tex. 1999).

### 1. Employer/Employee Relationship

"Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is 'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 n.3 (5th Cir.), *cert. denied*, 133 S. Ct. 795 (2012) (quoting 29 U.S.C. § 216(b)); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). In the case at bar, Wright seeks summary judgment as to Sandles's FLSA claims on the basis that the parties did not have an employer/employee relationship.

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "employ" means "suffer or permit to work." 29 U.S.C. § 203(g). Given these circular definitions, the United States Court of Appeals for the Fifth Circuit determines employee status by focusing "on whether the alleged employee . . . is economically dependent upon the business to which he or she renders his or her services." *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998) (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043, 1054 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987)); *see Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Trahan v. Honghua Am., LLC*, No. H-11-2271, 2013 WL 2617894, at *4 (S.D. Tex. June 10, 2013). Hence, the court's task is "to determine whether the individual is, as a matter of economic reality,

in business for himself or herself." *Herman*, 161 F.3d at 303; *accord Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010).

In making this determination, courts consider several non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Herman*, 161 F.3d at 303; *Thibault*, 612 F.3d at 846; *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1635 (2009); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993); *see also Gray*, 673 F.3d at 355 (articulating the economic realities factors as whether the alleged employer: (1) possessed the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records); *Williams*, 595 F.3d at 620 (same). "No single factor is determinative." *Herman*, 161 F.3d at 303; *Reich*, 998 F.2d at 327; *Neman v. Greater Houston All-Pro Auto Interiors, LLC*, No. 4:11-CV-03082, 2012 WL 896438, at *3 (S.D. Tex. Mar. 14, 2012). "Rather, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind." *Hopkins*, 545 F.3d at 343.

Under this approach, "'[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'" *Hopkins*, 545 F.3d at 343 (quoting *Brock*, 814 F.2d at 1049). "'[T]he lack of supervision over

minor regular tasks cannot be bootstrapped into an appearance of real independence.'" *Hopkins*, 545 F.3d at 343 (quoting *Brock*, 814 F.2d at 1049); *Trahan*, 2013 WL 2617894, at *5.

"The ultimate determination of employee status is a question of law based on underlying findings of fact." *Trahan*, 2013 WL 2617894, at *4 (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-26 (5th Cir. 1990)); *Brock*, 814 F.2d at 1045. "When the facts that bear on the employee status factors are disputed, summary judgment is inappropriate." *Trahan*, 2013 WL 2617894, at *4 (citing *Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532, 538-40 (E.D. La. 2011)); *Tran v. Thai*, No. H-08-3650, 2010 WL 5232944, at *5 (S.D. Tex. Dec. 16, 2010); *Heidingsfelder v. Burk Brokerage, LLC*, No. 09-3920, 2010 WL 4364599, at *2-3 (E.D. La. Oct. 25, 2010).

Here, Sandles has submitted evidence suggesting that she was an employee of Wright rather than an independent contractor. In her response to Wright's motion, Sandles attached a detailed affidavit describing her relationship with Wright as well as her duties as park host. Wright did not file a reply to Sandles's response or otherwise adduce evidence that contradicts her statement. According to Sandles, she was hired by Wright on January 7, 2012, as a full-time park host for Cedar Grove. Sandles lists her duties in that capacity as the following:

A.   checking campers in and out of the park;

B.   collecting rent from campers which included processing out-of-state credit card payments from campers who resided out of state;

C.   dispensing information to campers;

D.   providing camper services such as selling propane, providing change for the laundry, and responding to after-hours calls;

E.   maintaining and cleaning the office, laundry, bathrooms and nine RVs;

F.   handling incoming and outgoing mail for both the park and its campers, which included mail to be sent out of state and mail which was sent from out of state.  I specifically recall receiving packages on more than one occasion for Jessica Boggess who was a park tenant.  I also have a specific recollection of receiving a package for [Wright] from the Myron Corporation of Mayweed, New Jersey, while working at the park office;

G.   answering incoming calls to the office, which regularly and routinely included calls from outside the state of Texas.  I can specifically recall receiving work related telephone calls from Louisiana, Missouri, New York, Illinois, New Jersey, North Dakota, and Georgia;

H.   booking reservations, including those made by out-of-state campers;

I.   completing daily reports and incident reports for [Wright's] review.

Sandles was reportedly "on duty during the park's office hours which were 9:00 a.m. through 6:00 p.m. Monday through Saturday and 10 a.m. through 4:00 p.m. on Sundays."  She also claims to have worked an additional one hour each day turning on and off the park lights in the mornings and evenings.  In addition, Sandles maintains that she was "on call" during the hours the office was closed to handle such matters as early or late check-ins or check-outs by campers, problems with the park's wireless internet, facilities issues (*e.g.*, septic problems), and camper complaints.  For her efforts, Wright paid Sandles $200.00 per week and provided her on-site housing, with utilities included.

Further, Sandles contends that she worked under the direct supervision of Wright, who purportedly "came to the office almost every day[,]" and "conducted business for approximately six hours during each visit."  She describes Wright's work activities at Cedar Grove as follows:

A.   conducting meetings with park staff on Monday mornings;

B.   reviewing the previous day's report prepared by me concerning park operations and incidents;

C.   receiving and depositing whatever money I collected from the previous day;

D. giving direction to me on matters concerning the park's operations;

E. answering my questions concerning park operations;

F. replying to phone messages I had taken for him during his absence from the office;

G. inspecting the premises;

H. holding meetings with vendors and customer[s] at the park; and

I. generally reviewing and checking work performed by me and other park workers.

In addition to her declaration, Sandles attached Cedar Grove's Operational Plan to her response. As pointed out by Sandles, the Operational Plan "lays out in excruciating detail how [Sandles] and other staff are to operate the RV park, including such minute matter as to how [Sandles] was to answer the telephone."

Here, application of the factors set forth in *Herman* and *Gray* indicate that Sandles was Wright's employee. Indeed, Sandles's declaration and the Operational Plan belie the notion that Sandles acted independently; rather, the manner of her work and her hours were subject to Wright's almost daily control. In addition, Sandles's job duties—answering the telephone, checking guests in and out of the park, and providing other services to campers—as well as the fact that she had no training or experience prior to being hired by Wright, suggests that the job did not require a high degree of skill or initiative.

Additionally, Sandles asserts that Wright provided her with all manner and means to perform her duties, including office space, phones, and other office equipment and supplies. Thus, there is no indication that Sandles had an investment in Cedar Grove's facilities or equipment. Similarly, Sandles maintains that she made no personal financial investment and took

no financial risk in working at Cedar Grove; rather, she was reportedly paid a fee set by Wright for providing her services as a park host. As such, Sandles had no opportunity for profit or loss.

Regarding the permanency of the parties' working relationship, Sandles contends that she and Wright never negotiated or contemplated a specific end-date for her work as park host. Nonetheless, she asserts that, had she "not been terminated over a performance issue, [she] believes] she would still be working for [Wright] today."

Based on the record evidence in this case, it appears that Sandles was "economically dependent" upon Wright and not, as "a matter of economic reality," in business for herself. *See Herman*, 161 F.3d at 303; *accord Thibault*, 612 F.3d at 845; *Donovan*, 642 F.2d at 143. Consequently, summary judgment on the basis that there was no employee/employer relationship between the parties is unwarranted.

2.  FLSA Coverage

Wright also moves for summary judgment on Sandles's FLSA claims on the ground that she is not covered by the FLSA. "The FLSA protects employees who fall under either of two types of coverage: (1) 'enterprise coverage,' which protects all those who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce,' or (2) 'individual coverage,' which protects those who are individually 'engaged in commerce or in the production of goods for commerce,' regardless of whether the employer constitutes an enterprise." *Duran v. Wong*, No. 4:11-CV-3323, 2012 WL 5351220, at *2 (S.D. Tex. Oct. 23, 2012) (quoting 29 U.S.C. § 207(a)(1)); *see Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946)). *"Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin v. Bedell*, 955 F.2d 1029,

1032 (5th Cir.), *cert. denied*, 506 U.S. 915 (1992) (emphasis in original)); *Romero v. Funes*, No. H-11-3373, 2013 WL 655250, at *2 (S.D. Tex. Feb. 21, 2013); *Mendoza*, 911 F. Supp. 2d at 439; *Duran*, 2012 WL 5351220, at *2. "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Wright asserts that the facts of this case do not implicate the "enterprise theory," but he does not offer any argument as to how or why Sandles is not protected by the FLSA as an individual.[2] As a consequence, the court finds that Wright has failed to meet his initial burden of demonstrating the absence of a genuine issue of material fact on this point. *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

"Courts in the Fifth Circuit have interpreted the 'engaged in commerce' language in 29 U.S.C. §§ 206(a)(1) and 207(a)(1) by applying a 'practical test,' which looks to whether an employee's work 'is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Mendoza*, 911 F. Supp. 2d at 439 (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (citing *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960))); *see McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943) (stating that the test is whether the

---

[2] Sandles pleads that she is covered by both theories. *See* Amended Complaint, Docket No. 8, ¶ 3. Further, because the issue of individual coverage is resolved in Sandles's favor, see *infra* pp. 14-15, the court need not address the enterprise theory.

employee's activities "are actually in or so closely related to the movement of the commerce as to be a part of it"); *Williams*, 595 F.3d at 621; *Romero*, 2013 WL 655250 at \*2; *Garcia v. Green Leaf Lawn Maint.*, No. H-11-2936, 2012 WL 5966647, at \*2 (S.D. Tex. Nov. 28, 2012). It is not sufficient, however, "for purposes of the 'engaged in commerce' clause of the individual coverage provision, that an employee's work merely 'affects' interstate commerce in some way." *Mendoza*, 911 F. Supp. 2d at 439 (quoting *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967)).

Nonetheless, the Fifth Circuit has also held that "[t]here is no *de minimis* requirement." *Sobrinio*, 474 F.3d at 829; *Garcia*, 2012 WL 5966647, at \*2. "'[A]ny regular contact with commerce, no matter how small, will result in coverage.'" *Sobrinio*, 474 F.3d at 829 (quoting *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979)); *Garcia*, 2012 WL 5966647, at \*2. According to the Eleventh Circuit, for an employee to be "engaged in commerce," she must be "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in [her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. §§ 776.23(d)(2), 776.24).

Through her declaration, Sandles has produced evidence that she repeatedly received and made out-of-state telephone calls related to booking reservations or contacting out-of-state campers for other reasons. She also received telephone calls from outside of Texas while working for Wright, specifically recalling communicating with individuals from Louisiana, Missouri, New

14

York, Illinois, New Jersey, North Dakota, and Georgia. In addition, she reportedly processed credit card payments electronically across state lines while booking reservations or receiving rental payments from out-of-state campers. Sandles further claims that she handled mail which either had been sent from out of state or was to be sent to locations outside Texas. Viewing this evidence in the light most favorable to Sandles, there is a genuine issue of material fact regarding whether Sandles regularly engaged in commerce during her employment at Cedar Grove. Accordingly, summary judgment is inappropriate on this basis.

### 3. Evidence of Hours Worked

In her response to Wright's motion, Sandles argued and adduced evidence that she has performed work for which she allegedly was not compensated. Wright, however, did not move for summary judgment on this ground and did not file a reply contesting Sandles's assertions. Thus, an extended analysis of the issue is unnecessary. Nevertheless, the court notes that an employee who brings suit for unpaid overtime compensation under the FLSA bears the burden of proving, with definite and certain evidence, that she performed work for which she was not compensated properly. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *see also Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005); *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 545-46 (S.D. Tex. 2011); *Agee v. Wayne Farms LLC*, 675 F. Supp. 2d 684, 690 (S.D. Miss. 2009). Sandles has met her burden in this case, as she has attested that she worked in the park's office 60 hours per week, worked an additional 7 hours weekly turning on and off camp lights in the mornings and evenings, attended meetings on Monday mornings for half an hour, and worked an additional 2.5 hours each

week handling camp problems or check-ins and/or check-outs during non-office hours.  *See Prince v. MND Hospitality, Inc.*, No. H-08-2617, 2009 WL 2170042, at *6 (S.D. Tex. July 20, 2009) (finding plaintiff's initial burden satisfied where he submitted evidence as to when and how many overtime hours he worked); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (holding that plaintiffs' burden was satisfied by affidavits based on plaintiffs' recollections describing the time spent performing various tasks for which he did not receive overtime compensation).

C.   TMWA

Wright next seeks summary judgment as to Sandles's TMWA claim, asserting that dismissal is proper because (1) pursuant to TEX. LAB. CODE § 62.151, a person covered by the FLSA's minimum wage provisions may not also recover under Texas law, and (2) Sandles's complaint is not verified as expressly required by TEX. LAB. CODE § 62.204.  Regarding Wright's first assertion, "[t]he pleading of alternative theories is expressly permitted by Federal Rule of Civil Procedure 8(d)(2)."  *Leary v. State Farm & Cas. Co.*, No. 3:11-145, 2012 WL 604338, at *12 (W.D. Pa. Feb. 24, 2012) (citing FED. R. CIV. P. 8(d)(2)); *accord Douglas v. Beakley*, 900 F. Supp. 2d 736, 752 (N.D. Tex. 2012).  As such, the court finds dismissal of this claim inappropriate at this time.  *See Orozco v. Plackis*, No. A-11-CV-703, 2012 WL 2577522, at *9 (W.D. Tex. July 3, 2012) ("Given that [the defendant] contends that he is not a proper defendant in a[n] FLSA claim, it is appropriate for [the plaintiff] to pursue [the] alternative [TMWA] claim.").

Next, while Wright is correct that Sandles's complaint is not verified as required by TEX. LAB. CODE § 62.204, he did not cite (and the court has failed to unearth) any case in which a court

16

granted summary judgment on this basis. Moreover, it is unclear whether the verification requirement in § 62.204 is a state procedural rule inapplicable in federal court. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1339 (2013) (citing *Employers Mut. Liab. Ins. Co. v. Blunt*, 227 F.2d 312, 312 (5th Cir. 1955), *cert. denied*, 350 U.S. 994 (1956) and *Sned Shipbuilding, Inc. v. Spanier Marine Corp.*, 125 F.R.D. 438, 444 (E.D. Tex. 1989)). The parties have not briefed or raised this issue. As a result, the court declines to grant summary judgment on this ground. In any event, Sandles is permitted to cure this deficiency within 10 days after the entry of this order.

      D.    <u>Sufficiency of the Complaint</u>

Lastly, Wright moves for dismissal of Sandles's complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *accord Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990); *see Great Plains Trust Co.*, 313 F.3d at 312; *Ainsworth v. Caillou Island Towing Co.*, ___ F. Supp. 2d ___, 2013 WL 3216068, at *3 (E.D. La. June 24, 2013). Such motions are treated as a motion for judgment on the pleadings based on a failure to state a claim upon which relief can be granted. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013); *Gentilello v.*

*Rage*, 627 F.3d 540, 543-44 (5th Cir. 2010) ("We evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim."); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The primary focus is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See United States v. 0.073 Acres of Land*, 705 F.3d 540, 543 (5th Cir. 2013); *Great Plains Trust Co.*, 313 F.3d at 312; *Hughes*, 278 F.3d at 420. "'Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" *Great Plains Trust Co.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420); *accord 0.073 Acres of Land*, 705 F.3d at 543.

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). It is not a procedure for resolving contests about the facts or the merits of a case. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1356, at 294 (1990). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1669 (2009); *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *Ramming*, 281 F.3d at 161. Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a

court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182 (2008).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Here, Sandles has alleged facts sufficient to place Wright on notice of her suit against him for failure to pay her the overtime and minimum wages required by the FLSA. Sandles alleges that she was employed by Wright, that she worked more than 40 hours in a week, and that she was not paid minimum wage or overtime in violation of the FLSA. These allegations, while not detailed, are sufficient to withstand dismissal. *See McCollim v. Allied Custom Homes, Inc.*, No. H-08-3754, 2009 WL 1098459, at *3 (S.D. Tex. Apr. 23, 2009) (finding a similar complaint sufficient where the plaintiff alleged that she and others were misclassified as independent contractors rather than employees and that they should have been paid overtime for hours worked in excess of forty hours per week, in violation of the FLSA).

Moreover, Sandles has proffered evidence of FLSA coverage and violations on the part of Wright, which is the relevant consideration when considering summary judgment. *See Jarbo v. Cnty. of Orange*, No. SA-CV-05-202, 2010 WL 3584440, at *15 (C.D. Cal. Aug. 30, 2010) (rejecting defendant's pleading deficiency argument at summary judgment stage and reasoning that, while the complaint lacked the pertinent allegations and would have been dismissed pursuant to a 12(b)(6) motion, plaintiff had now come forth with competent evidence supporting his claim); *Lillibridge Health Care Servs. Inc. v. Hunton Brady Architects, P.A.*, No. 6:08-CV-1028, 2010 WL 1417193, at *5 (M.D. Fla. Apr. 7, 2010) (declining to grant summary judgment on the basis of an alleged pleading deficiency). Consequently, the court declines to dismiss this action on the basis of an alleged pleading deficiency.

III.    Conclusion

Consistent with the foregoing analysis, the court finds that Sandles's complaint contains sufficient facts to state plausible claims for minimum wage violations under the FLSA and the

TMWA and overtime compensation under the FLSA.  Further, there exist genuine issues of material fact with respect to these causes of action.  Accordingly, Wright's motion is DENIED.

SIGNED at Beaumont, Texas, this 3rd day of October, 2013.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE